UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| CSX Transportation, Inc., | ) | Civil Action No.: 4:15-cv-01014-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| The Baltimore and Annapolis | ) | |
| Railroad Company d/b/a | ) | |
| Carolina Southern Railroad | ) | |
| Company d/b/a | ) | |
| Waccamaw Coast Line Railroad | ) | |
| Company, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on a motion for summary judgment [ECF No. 64] filed by Defendant, The Baltimore and Annapolis Railroad Company d/b/a Carolina Southern Railroad Company d/b/a Waccamaw Coast Line Railroad Company (hereinafter "B&A"), on September 29, 2016. For the reasons stated below, B&A's motion for summary judgment granted in part and denied in part.[1]

**Factual Background**

In this case, Plaintiff CSX Transportation, Inc. ("CSX") seeks reimbursement from Defendant B&A for the cost of replacing the Mullins Railroad Crossing. CSX contends that B&A is responsible for the cost of replacing the Mullins Crossing pursuant to a March 27, 1987 agreement originally made between CSX and Duval Transportation of the Carolinas, Inc. Alternatively, CSX contends that B&A is responsible for the cost of replacing the Mullins Crossing

---

[1] Under Local Civil Rule 7.08 (D.S.C.), "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." Upon review of the briefs, the Court finds that a hearing is not necessary.

based on unjust enrichment and S.C. Code Ann. § 58-17-2620.

By way of background, B&A, d/b/a Carolina Southern Railroad Co., purchased the Conway-Mullins rail line from Mid-Atlantic Railroad in or about 1995. Mid-Atlantic Railroad was the successor to Duval Transportation of the Carolinas, Inc., ("Duval Transportation"). The Conway-Mullins line spans approximately 100 miles and runs east to west from Chadbourn, North Carolina to Mullins, South Carolina. In Chadbourn, the rail line then travels south to Conway, South Carolina before ending in Myrtle Beach. B&A's track crosses CSX's mainline track at the Mullins Crossing. The Mullins Crossing is the only access point for B&A railcars to access the national rail system or the portion of B&A's track that is located west of the crossing. Interchange tracks are used at the Mullins Crossing so that B&A can interchange rail cars with CSX and access the national rail system.

CSX alleges that at the time of B&A's purchase of the Conway-Mullins line, CSX and Duval Transportation were operating under (1) an Interchange Agreement [ECF No. 77-4]; and (2) a Crossing Agreement [ECF No. 77-3] that covers maintenance and replacement of a crossing. The Interchange agreement provided terms for the interchange of rail cars between CSX and Duval Transportation (the "Interchange Agreement"). The Crossing Agreement provided Duval Transportation with the right to access and cross the Mullins Crossing in order to access tracks located west of the crossing (including the interchange tracks) and to interchange rail cars with CSX (the "Crossing Agreement"). CSX has attached a copy of these agreements to its response to B&A's motion for summary judgment.

When B&A purchased the Conway-Mullins line, the original agreements (Interchange and Crossing Agreements) between CSX and Duval were amended to replace Duval Transportation with

B&A. *See* [Letter Agreements, ECF No. 77-5]. Initially, the letter agreements that substituted B&A for Duval Transportation were only temporary extensions of the original Interchange and Crossing Agreements and were intended to remain in effect only until the parties could draft new agreements. The temporary extensions of the Interchange and Crossing Agreements were set to expire on May 8, 1995, which was 90 days after B&A's acquisition of the Conway-Mullins line. [April 10, 1995 Letter Agreement, ECF No. 77-5, at 9]. A letter agreement dated April 10, 1995, extended the Interchange and Crossing Agreements until November 8, 1995, so that replacement agreements could be drafted. *Id.* A subsequent letter agreement dated November 17, 1995, extended the Interchange and Crossing Agreements until May 8, 1996. *See* [ECF No. 77-5, at 11]. However, CSX alleges the Crossing and Interchange Agreements were intended to remain in operation until such time as the parties could come to terms on new agreements, which never happened. Because no new agreements were ever reached between CSX and B&A, CSX alleges the parties continued to operate under the terms of the original Interchange and Crossing Agreement. CSX contends that B&A understood that CSX was under the belief that the Crossing Agreement was in effect and that CSX had only intended to provide B&A with access to the Mullins Crossing pursuant to the terms of that agreement.

Because rail tracks are subject to wear and tear from rail traffic, they need to be periodically inspected and repaired to conform to Federal Railroad Association ("FRA") guidelines. If tracks deteriorate to a point where they cannot be repaired, they must be replaced.

B&A states in its brief that it ceased operations in 2011 due to an embargo by the FRA. However, Jason Pippen, General Manager with B&A, testified that B&A continued to service some customers through 2014. [Pippen Dep., ECF No. 77-1, at 13]. CSX states that B&A had mostly

3

ceased operations by 2014 due to its failure to properly maintain the Mullins-Conway line within the guidelines mandated by the FRA.

In 2014, CSX, through its engineering department, determined that the Mullins Crossing needed to be either replaced or removed due to its deteriorated condition in order to conform to FRA guidelines. The cost to CSX to remove or "straight-line" the crossing was estimated at $25,000.00. [Brubeck Dep., ECF No. 77-7, at 39-40]. Before removing the crossing, CSX approached B&A in order to allow B&A to decide whether the crossing should be removed or replaced. *Id*. at 37-38; Kellerman Dep., ECF No. 77-2, at 12-13. B&A did not agree to allow CSX to remove the Mullins Crossing. Kellerman Dep. 12-13. Leonard Kellerman, who worked as the short line liaison for CSX, testified that B&A communicated to him that they did not want the Mullins Crossing removed because removal would diminish the value of the Mullins-Conway line, which B&A was trying to sell. Kellerman Dep. 14-15. CSX then replaced the crossing at a cost of approximately $160,000 and invoiced the replacement costs to B&A pursuant to the Crossing Agreement, which remains unpaid.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).
When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v.*

*Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"Once the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, unsupported speculation, or conclusory allegations to defeat a motion for summary judgment. *See Baber*, 977 F.2d at 875. Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## Discussion

### I.  Breach of Contract

B&A argues that summary judgment should be granted on CSX's breach of contract claim because any contractual obligation B&A may have had with CSX expired on May 8, 1996, when the last extension of the original Crossing Agreement expired and no new agreement was put in place. CSX responds that based on the conduct of the parties and B&A's continued use of the Mullins Crossing after May 8, 1996, there is a genuine issue of material fact as to whether the parties intended to continue to be bound by the terms of the original Crossing Agreement.

The Crossing Agreement provides in relevant part:

5

> WHEREAS, [B&A] desires the right to cross the right of way and
> track of CSXT at grade by utilizing the existing crossing at
> Mullins, South Carolina . . . CSXT is willing to grant B&A such
> right upon the terms and conditions hereinafter set forth . . . CSXT
> shall be responsible for the maintenance of the Crossing, including
> crossing frogs, and appliances necessary or appurtenant thereto, in
> condition adequate for operations occurring thereover. The cost
> and expenses of such maintenance shall be borne by [B&A].

[Crossing Agreement, ECF No. 77-3].

An express contract is an obligation which arises from the actual agreement of parties as manifested by words. *Rolandi v. City of Spartanburg*, 363 S.E.2d 385, 386 (S.C. Ct. App. 1987). An implied in fact contract is a contract which arises when the assent of the parties to the agreement is manifested by conduct. *Rolandi*, 363 S.E.2d at 386-87. "Express contracts and contracts implied in fact depend upon the will of the parties to be bound, indicated in the one case expressly in some form recognized by law, and in the other by circumstances from which assent may be inferred as a conclusion of fact." *U.S. Rubber Products v. Town of Batesburg*, 190 S.E. 120, 126 (S.C. 1937). "If, after the expiration of a contract, the parties to the contract continue to perform under the contract's terms, the parties' relationship is generally governed by a new, implied in fact contract that incorporates the terms, or substantially the same terms, of the expired contract." 17A Am. Jur. 2d Contracts § 17. "The existence of an implied contract is a question of fact." 13 S.C. Juris. Implied Contracts § 12.

Viewing the evidence in the light most favorable to CSX, there is a genuine issue as to whether there existed an implied in fact contract that incorporated the terms of the original Crossing Agreement. There is no dispute that B&A continued to use the Mullins Crossing after May 8, 1996 through 2014. B&A also continued to interchange railcars with CSX during that period. B&A's

6

right to access the Mullins Crossing arose from the terms and conditions of the Crossing Agreement. CSX argues that in the absence of the Crossing Agreement, B&A would not have been permitted to use the Mullins Crossing. Based on B&A's almost 18 years of continued use and access to the Mullins Crossing, a reasonable juror could conclude that the parties intended to continue to be bound by the terms of the Crossing Agreement even though no new express agreement was finalized. While any express contract between the parties clearly expired on May 8, 1996 per the terms of the letter agreement, there is a question of fact as to whether there existed an implied in fact contract based on the subsequent 18 year course of dealings between the parties. B&A's motion for summary judgment is denied as to CSX's breach of contract claim.

**II.    Unjust Enrichment**

B&A moves for summary judgment on CSX's unjust enrichment claim arguing that there is no evidence to support a claim of unjust enrichment because the Mullins-Conway line was non-operational at the time the Mullins Crossing was replaced. The elements to recover on a claim for unjust enrichment are: "(1) a benefit conferred by the plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value." *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 532 S.E.2d 868, 872 (S.C. 2000).

CSX argues that at the time of replacement, the Mullins Crossing had little if any benefit to CSX. As a result, CSX sought to remove the crossing. According to CSX's short line liaison Leonard Kellerman, B&A refused to permit the removal of the crossing because the crossing had inherent value to B&A's rail operations and was essential in order for B&A to cultivate business and sell its rail line. Kellerman Dep. at 14-15. CSX states that it replaced the crossing, following

7

B&A's objection to the removal of the crossing, at a cost of approximately $160,000.00. CSX notes that it would have preferred to remove the crossing at a cost of $25,000.00, but B&A objected to the removal. After the Mullins Crossing was replaced, B&A sold the railroad to R.J. Corman.

CSX argues that B&A understood that tracks are subject to inspection and periodically need to be replaced. CSX further argues that B&A knew that CSX was operating under the assumption that the Crossing Agreement was in effect and that CSX had only intended to provide B&A with access to the Mullins Crossing pursuant to the terms of the Crossing Agreement.

Viewing the evidence in the light most favorable to CSX, CSX would not have replaced the Mullins Crossing if it were not for B&A's objections to removal and CSX's belief that the Crossing Agreement was in effect. Under the facts of this case, there is a question of fact as to: 1) whether CSX conferred a benefit upon B&A by replacing the Mullins Crossing; 2) whether B&A realized the benefit of replacement through its subsequent sale of the railroad to R.J. Corman; and 3) whether the circumstances of this case make it inequitable for B&A to retain the benefit of replacing the crossing without paying for its value. For those reasons, B&A is not entitled to summary judgment on CSX's claim for unjust enrichment.

**III.     S.C. Code Ann. § 58-17-2620**

CSX alternatively claims that even in the absence of a contract, B&A would still be liable for the cost of replacing the Mullins Crossing under S.C. Code Ann. § 58-17-2620. Section 58-17-2620 provides:

> When any railroad company owning, leasing or operating a railroad in or through any part of this State shall have its terminus or any part of its track at or near the terminus of any other railroad in this State having the same gauge or shall cross such other railroad's track, such railroad company may join its track by safe and proper

8

>    switches, with such other railroad and for this purpose may enter
>    upon the right of way of such other railroad. But if the railroad
>    with which such connection is proposed shall refuse to join in
>    paying the expenses of making such connection the railroad
>    proposing the connection shall pay them.

B&A argues that summary judgment should be granted on this claim because there is no evidence that B&A requested the replacement of the Mullins Crossing on a line that was non-operational. Neither party provides any case law applying S.C. Code Ann. § 58-17-2620 and the Court was unable to find a single South Carolina state or federal case applying the statute.

The plain terms of the statute appear to contemplate a situation involving the placement or construction of a new connection to a railroad, not ongoing maintenance issues between two rail lines over an existing crossing.[2] Nevertheless, even assuming § 58-17-2620 applies to the present situation and there exists a private right of action to bring a lawsuit for a violation of that section, CSX has offered insufficient evidence to create an issue of fact as to whether B&A specifically or expressly proposed or requested the replacement of the Mullins Crossing. Leonard Kellerman simply testified that B&A objected to the removal of the crossing. Kellerman Dep. at 13. Kellerman testified that he did not have any other conversations with anyone at B&A regarding the Mullins Crossing. *Id.* at 17. Importantly, Kellerman did not testify that B&A requested or proposed the replacement of Mullins Crossing.[3] Mere speculation or conjecture cannot create a genuine issue of material fact. *Cox v. County fo Prince William*, 249 F.3d 295, 299 (4th Cir. 2001).

---

[2] The Court also questions whether S.C. Code Ann. § 58-17-2620 creates a private right of action for parties to recover disputed maintenance expenses for an existing crossing.

[3] Lizabeth Brubeck (30(b)(6) designee for CSX) testified that it was her understanding that the Mullins Crossing was replaced "at the request of the short line." Brubeck Dep. at 39. However, Brubeck further testified that she came to that understanding based on her communications with Leonard Kellerman. Again, Kellerman did not testify that B&A specifically requested replacement of the Mullins Crossing.

9

CSX may be entitled to reimbursement of its costs in replacing the Mullins Crossing under either an implied in fact contract theory or unjust enrichment as explained above. CSX, however, is not entitled to reimbursement under § 58-17-2620 because the record does not indicate that B&A requested or proposed the replacement of Mullins Crossing. Accordingly, B&A is entitled to summary judgment on CSX's claim under S.C. Code Ann. § 58-17-2620.

## **Conclusion**

For the reasons stated above, B&A's [ECF No. 64] motion for summary judgment is **GRANTED in part and DENIED in part**.

IT IS SO ORDERED.

May 24, 2017  
Florence, South Carolina

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge